[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 21-12672

Non-Argument Calendar

_____

LAKEISHA E. MCNEAL,

Plaintiff-Appellant,

*versus*

INTERNATIONAL PAPER,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Alabama
D.C. Docket No. 1:19-cv-00602-KD-N

_____

Before JORDAN, NEWSOM, and LAGOA, Circuit Judges

PER CURIAM:

Lakeisha McNeal appeals the district court's order granting summary judgment in favor of International Paper on her claims of race and sex discrimination and retaliation claims under Title VII, 42 U.S.C. § 2000e-2(a)(1), and Section 1981, 42 U.S.C. § 1981. First, McNeal argues that the district court erred in finding that she failed to identify a similarly situated comparator for the purpose of making a *prima facie* case of race or sex discrimination. Second, McNeal argues that the district court erred in finding that she failed to identify protected activity or a causal connection between that activity and her firing for the purpose of making a *prima facie* case of retaliation. Additionally, McNeal argues that the district court's grant of summary judgment for International Paper violated her Seventh Amendment right to a jury trial. After careful review, we affirm the district court's entry of summary judgment in favor of International Paper.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On April 14, 2014, International Paper hired McNeal, a Black female, to work in the shipping department of International Paper's plant in Bay Minette, Alabama. Alfred Wallace, a white male, was the shipping department manager, and Neal White was the manufacturing manager for the Bay Minette plant. McNeal reported to Wallace, and Wallace reported to White. At times,

Barbara Stevens-McGinnis, a Black female and supervisor in the converting department, would also direct McNeal's work.

Upon her hiring, McNeal received a copy of, was made aware of, and read International Paper's policy against discrimination, harassment, or retaliation. The United Steelworkers Union (the "union"), of which McNeal was a member during her employment with International Paper, had a labor agreement with International Paper. The policy contained a progressive discipline system that depended on how many incidents of discipline the employee received within a year. The system's typical progression consisted of the following steps: (1) verbal warning; (2) written warning; (3) suspended three days; and then (4) termination of employment. After a year, incidents of discipline issued to an employee would be removed from the employee's record.

On March 29, 2016, McNeal was issued a written warning after she ran a "spot truck" out of fuel. On October 27, 2017, McNeal was given a verbal warning for poor job performance. Because one year passed after each of these incidents without further discipline, these warnings were removed from McNeal's record.

Then, beginning on December 20, 2018, International Paper took four disciplinary actions against McNeal within a year. First, on December 20, 2018, McNeal received a verbal warning for failing to follow instructions regarding production issues. Second, on January 10, 2019, McNeal received a written warning after she fell asleep operating a forklift and collided with a safety barrier. Third, on March 1, 2019, McNeal was suspended for three days after she

took an unauthorized break without following department procedure. And fourth, on July 26, 2019, McNeal was terminated after she failed to follow shipping instructions when loading a trailer.

After her third disciplinary incident, McNeal filed a grievance through her union alleging that she was disciplined "for the wrong reason" and that White and Stevens-McGinnis harassed her on the radio and in person. She made no reference to race or sex in that grievance. International Paper investigated McNeal's grievance, conducting interviews with McNeal, Stevens-McGinnis, White, and other employees. After the investigation, International Paper denied McNeal's grievance. The union did not appeal that decision.

On August 6, 2019, McNeal filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC). The EEOC dismissed McNeal's charge on August 14, 2019, stating that it was "unable to conclude that the information obtained establishes violations of the statutes."

On August 29, 2019, McNeal filed suit against International Paper alleging claims for race and sex discrimination and retaliation. On October 29, 2020, McNeal filed an amended complaint. Following discovery, on May 21, 2021, International Paper moved for summary judgment. McNeal opposed International Paper's motion.

The district court granted summary judgment in favor of International Paper on all of McNeal's claims. On her race and sex

discrimination claim, the district court found that: (1) McNeal failed to produce sufficient evidence of similarly situated comparators such that she had not carried her burden in demonstrating a *prima facie* case; (2) even if McNeal had established a *prima facie* case of discrimination, International Paper satisfied its burden to show a legitimate, non-discriminatory reason for termination; and (3) McNeal failed to show evidence that International Paper's reason was pretextual or that a convincing mosaic of circumstantial evidence showed discrimination. On her retaliation claim, the district court found that: (1) McNeal failed to show that she was engaged in statutorily protected activity; and (2) McNeal failed to show causation between the alleged protected activity and her termination. This appeal followed.

## II.    STANDARD OR REVIEW

"We review a district court's grant of summary judgment *de novo*." *Wadley Crushed Stone Co., LLC v. Positive Step, Inc.*, 34 F.4th 1251, 1256 (11th Cir. 2022). "We grant summary judgment 'when viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.'" *Id.* (quoting *Sierra Club, Inc. v. Leavitt*, 488 F.3d 904, 911 (11th Cir. 2007)).

## III.    ANALYSIS

We begin by addressing McNeal's argument that the district court erred by granting summary judgment for International Paper on her race and sex discrimination claims. We then address

McNeal's argument that the district court erred by granting summary judgment for International Paper on her retaliation claim.[1]

## A. McNeal's Race and Sex Discrimination Claims

Title VII precludes employers from discriminating against an employee "because of" her race or sex. 42 U.S.C. § 2000e-2(a). Title 42 U.S.C. § 1981 prohibits intentional race discrimination in the making and enforcement of public and private contracts, including employment contracts. See *Johnson v. Ry. Express Agency*, 421 U.S. 454, 459–60 (1975). Title VII racial disparate treatment claims and § 1981 race discrimination claims are evaluated using the same analytical framework. *Rice-Lamar v. City of Ft. Lauderdale*, 232 F.3d 836, 843 n.11 (11th Cir. 2000).

Title VII and § 1981 discrimination claims that rely on circumstantial evidence are evaluated under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Chapter 7 Tr. v. Gate Gourmet, Inc.*, 683 F.3d 1249, 1255 (11th Cir. 2012). Under *McDonnell Douglas*, the plaintiff bears the initial burden to establish a *prima facie* case of discrimination. 411 U.S. at 802. Here, McNeal argues that the district court failed in finding that she did not make a *prima facie* case. To

---

[1] McNeal also argues that the district court's grant of summary judgment infringed on her Seventh Amendment right to a jury trial. This argument is foreclosed by this Court's precedent. "The Supreme Court made clear long ago that 'summary judgment does not violate the Seventh Amendment." *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 920 (11th Cir. 2018) (quoting *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 336 (1979)).

establish a *prima facie* case of discrimination, the plaintiff must show that: (1) she is a member of a protected class; (2) she was qualified for her position; (3) that she suffered an adverse employment action; and (4) she was treated less favorably than a similarly situated employee outside of her class. *Lewis v. City of Union City*, 918 F.3d 1213, 1220–21 (11th Cir. 2019) (en banc). The parties here dispute only the last prong, i.e., whether McNeal has demonstrated similarly situated "comparators." *See id.* at 1217.

If a plaintiff establishes a *prima facie* case of discrimination, the burden then shifts to the employer to rebut it by producing evidence that the employer had a legitimate, nondiscriminatory reason for its action. *Id.* at 1221. The employee then bears the burden to show that the employer's reason is pretextual. *Id.*

   i.   *The district court did not err in finding that McNeal failed to show a similarly situated comparator.*

To be similarly situated, a comparator must be "similarly situated in all material respects," meaning that the plaintiff and the comparator are "sufficiently similar, in an objective sense, [such] that they 'cannot reasonably be distinguished.'" *Id.* at 1218, 1228 (quoting *Young v. Parcel Serv., Inc.*, 575 U.S. 206, 231 (2015)). This standard requires a case-by-case analysis, and minor differences in job functions between a plaintiff and a comparator are not dispositive as to whether they are similarly situated. *Id.* at 1227. However, a similarly situated comparator will ordinarily "have engaged in the same basic conduct" as the plaintiff, "will have been subject to the same employment policy," will have ordinarily had the same

supervisor, and "will share the plaintiff's employment or disciplinary history." *Id.*

McNeal proffered Tony Perkins, a white male who worked with McNeal, as a similarly situated comparator. According to McNeal, Perkins was treated better than her because he received six disciplinary actions before he was fired, while McNeal received only four before her termination. But her argument is contradicted by the record. Because of the progressive discipline policy in which incidents are removed from the count after twelve months, Perkins, just like McNeal, received four disciplinary actions within the year before he was terminated. Also, the comparison further fails as McNeal herself received six disciplinary actions, two of which were removed from her record under the policy. Therefore, McNeal has not met her burden in establishing that Perkins is similarly situated in all material respects.

McNeal also proffered Terry Phillips, a white male, and Raymond Seals, a Black male, as similarly situated comparators who slept on the forklift and damaged the forklift without consequences. Apart from a brief description in her deposition, the record is absent of any other information relating to Phillips and Seals. McNeal also fails to provide information related to the timing of these incidents and the individuals' disciplinary history. Without such information, the individuals offered by McNeal cannot serve as comparators. And without such comparators, McNeal cannot make a *prima facie* case of race or sex discrimination.

International Paper also argues that even without comparators, McNeal could not show a "convincing mosaic" of race or sex discrimination. The district court noted that McNeal made no argument on this point, but the evidence was not sufficient to give rise to an inference of discrimination under *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011) (summary judgment is improper if "the circumstantial evidence raises a reasonable inference that the employer discriminated against the plaintiff"). McNeal mentions *Smith* on appeal but does not expressly make an argument on this point. Even if we were to conclude that McNeal had not waived this argument by failing to raise it below, *see Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004), or by failing to adequately brief it on appeal, *see Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008), we conclude that the district court did not err in finding that McNeal did not present sufficient evidence to portray a convincing mosaic of circumstantial evidence. The record evidence shows that both men and women, and Black and white employees were disciplined for similar conduct as McNeal. And McNeal testified that she never heard remarks about her race or sex from supervisors.

*ii.   The district court did not err in finding that IP offered a legitimate, nondiscriminatory reason for the termination that McNeal did not show to be pretextual.*

Even if McNeal could establish a *prima facie* case, the burden then shifts to the employer to rebut it by producing evidence that the employer had a legitimate, nondiscriminatory reason for

its action. *Lewis*, 918 F.3d at 1221. The employee then bears the burden to show that the employer's reason is pretextual. *Id.* To show pretext, a plaintiff "must demonstrate 'such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence.'" *Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1265 (11th Cir. 2010) (quoting *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997)). If the employer's reason for termination is one that "might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000). The plaintiff then must show both that the proffered reason was false and that discrimination was the true reason for the adverse action. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993).

Employers "are free to fire their employees for 'a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason.'" *Flowers v. Troup Cnty., Ga., Sch. Dist.*, 803 F.3d 1327, 1338 (11th Cir. 2015) (quoting *Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1187 (11th Cir. 1984)). Therefore, even if a plaintiff's evidence supports an interference that the proffered reason is "pretext of *something*," summary judgment is appropriate if the plaintiff does not produce evidence that the reason was pretext of discrimination. *Id.* at 1337–38.

In this case, International Paper offered a legitimate, nondiscriminatory reason for terminating McNeal—she received four disciplinary actions within a year and was fired pursuant to the company's policy.  While McNeal does not dispute this, she tries to show that this reason was pretextual by pointing to the allegedly favorable treatment given to Perkins.  As discussed above, the record evidence does not show that International Paper  treated Perkins differently.  McNeal therefore failed to provide sufficient evidence from which a factfinder could reasonably determine that International Paper's reason for termination was a pretext.

Accordingly, we affirm the district court's grant of summary judgment on McNeal's race and sex discrimination claim.

### B.  McNeal's Retaliation Claim

Title VII prohibits an employer from retaliating against an employee for opposing "any practice" made unlawful by Title VII (the "Opposition Clause"), or making a charge, testifying, assisting, or participating in a Title VII proceeding or investigation (the "Participation Clause").  42 U.S.C. § 2000e-3(a).  Section 1981 also provides an avenue for retaliation claims.  *See CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 446 (2008). McNeal makes a retaliation claim under the Opposition Clause.

When analyzing claims of retaliation based on circumstantial evidence, we employ the *McDonnell Douglas* analytical framework.  *See Bryant v. Jones*, 575 F.3d 1281, 1307 (11th Cir. 2009).  Under this framework, the plaintiff must first establish a *prima facie*

case of retaliation. *Id.* If a plaintiff establishes a *prima facie* case of retaliation, and the defendant articulates a legitimate, nondiscriminatory reason for the adverse action, the plaintiff then has an opportunity to show that the defendant's proffered reason was a pretext for retaliation. *Id.* at 1308.

To establish a *prima facie* case of retaliation, a plaintiff may show that: (1) she engaged in a statutorily protected activity; (2) she suffered an adverse action; and (3) she established a causal link between the protected activity and the adverse action. *Id.* at 1307–08. The parties dispute only the first and third requirements.

i.   *The district court did not err in finding that McNeal failed to show that she was engaged in a statutorily protected activity.*

"To establish statutorily protected conduct under Title VII's opposition clause, [a plaintiff] must 'show[] that he had a good faith, reasonable belief that the employer was engaged in unlawful employment practices.'" *Howard v. Walgreen Co.*, 605 F.3d 1239, 1244 (11th Cir. 2010) (second alteration in original) (quoting *Little v. United Tech., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997)). The plaintiff must show both that she subjectively believed that the employer engaged in unlawful discrimination, and that her belief was objectively reasonable in light of the facts and record present. *Id.* The plaintiff need not prove that the conduct she opposed was actually unlawful, but the reasonableness of her belief that the employer "engaged in an unlawful employment practice must be measured against existing substantive law." *Id.*

(quoting *Clover v. Total Sys. Serv., Inc.*, 176 F.3d 1346, 1351 (11th Cir. 1999)).  "Unfair treatment, absent discrimination based on race, sex, or national origin, is *not* an unlawful employment practice under Title VII."  *Coutu v. Martin Cnty. Bd. Of Com'rs*, 47 F.3d 1068, 1074 (11th Cir. 1995).

McNeal argues that the grievance she filed after her third disciplinary action was statutorily protected activity.  Her grievance, however, makes no reference to race or sex discrimination.  As such, we conclude that her grievance is not aimed at an unlawful employment practice under Title VII and is not statutorily protected.  *See id.* at 1074.

### ii.  The district court did not err in finding that McNeal failed to show a causal link between her allegedly protected activity and her termination.

The causal link element is construed broadly so that a plaintiff merely must prove that the protected activity and negative employment action are not completely unrelated. *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001).  "Close temporal proximity between protected conduct and an adverse employment action is generally 'sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection.'" *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1298 (11th Cir. 2006) (quoting *Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000)).  However, this proximity must be "very close." *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (quoting *Clark Cnty Sch. Dist. V. Breeden*,

532 U.S. 268, 273 (2001)). "A three to four month disparity between the statutorily protected expression and the adverse employment action is not enough." *Id.*

McNeal's allegedly protected activity, her grievance, occurred five months before her termination, a gap too distant to support a causal relationship. But even if the protected activity is timed at the union's closing of the complaint, there is unrebutted record evidence demonstrating that the decisionmaker did not know of the closing. And, as with her race and discrimination claim, McNeal does not offer evidence to show that International Paper's legitimate, nondiscriminatory reason for termination was pretext.

Accordingly, we affirm the district court's grant of summary judgment on McNeal's retaliation claim.

## IV.    CONCLUSION

For all these reasons, we affirm the district court's order granting summary judgment for International Paper on McNeal's claims.

**AFFIRMED.**